UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNION PACIFIC RAILROAD CO.,  ) | Case No.: 2:09-cv-01622-GMN-RJJ |
| ) | |
| Plaintiff,  ) | **ORDER** |
| vs.  ) | |
| ) | |
| GUARD DOG HEAVEN, LLC, et al.,  ) | |
| ) | |
| Defendants.  ) | |
| ) | |

This case arises out of a company's alleged interference with a railroad corporation's federally protected right of way.  Pending before the Court is Third-Party Defendants Steven M. Randall, Inc.'s and Steven M. Randall's (collectively, "TPD") Motion for Summary Judgment (ECF No. 43).  For the reasons given herein, the Court GRANTS the motion.

I.  **FACTS AND PROCEDURAL HISTORY**

Plaintiff in this case is Union Pacific Railroad Co. ("Union Pacific").  Plaintiff sued Defendant Guard Dog Heaven, LLC ("Guard Dog") in this Court pursuant to 28 U.S.C. § 1331.[1]  Specifically, Plaintiff claims that pursuant to the General Railroad Right of Way Act of 1875, 43 U.S.C. §§ 934–39, it has a right of way for use and occupancy "to the extent of one hundred feet on each side of the central line of" a railroad through public lands of the United States. (ECF No. 1 ¶¶ 5, 7 (quoting 43 U.S.C. § 934).)  Plaintiff claims Guard Dog's property ("the Property")[2] was public land of the United States as of 1875, that Plaintiff's predecessor in interest established

---

[1] The Complaint states, "This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 [sic] because the Complaint arises from Union Pacific's rights pursuant to federal statute." (ECF No. 1 ¶ 3.)

[2] The Property is located at 4510 Wagon Trail Ave., Las Vegas, NV 89119 and bears Clark County Assessor Parcel Number 177-06-101-009. (ECF No. 1 ¶ 6.)

the right of way by filing an application that the Secretary of the Interior approved on or about April 20, 1906 (pursuant to § 937), and that Guard Dog has now erected a fence interfering with the right of way. (*See id.* ¶¶ 6, 8–13.)  Plaintiff brings three causes of action: (1) Declaratory Relief Under 28 U.S.C. §§ 2201 and Quiet Title Under Nev. Rev. Stat. § 40.010; (2) Trespass; and (3) Private Nuisance. On October 29, 2009, Guard Dog filed a Third-Party Complaint ("TPC") (ECF No. 9) against Third-Party Defendants Nevada Title Insurance Co. ("Nevada Title"); Chicago Title Insurance Co. ("Chicago Title"); Wagon Trail, LLC; Carl W. Thomas; Laura M. Thomas; Fidelity National Title Insurance Co. ("Fidelity Title"); Steven M. Randall, Inc. d/b/a Criterion Group ("Criterion"); Steven W. Randall; Westcor Land Title Insurance Co. ("Westcor Title"); and Bank of Las Vegas.  Guard Dog alleges that on or about August 31, 2006, it purchased the Property for $1.1 million cash from Wagon Trail and its managers, Carl and Laura Thomas, and that Nevada Title was the escrow agency for this purchase. (ECF No. 9 ¶¶ 16–17.)  Guard Dog purchased a title insurance policy with policy no. 72067-19906 (the "First Policy") from Chicago Title and/or Fidelity Title, and the title search failed to discover any right of way held by Plaintiff. (*Id.* ¶¶ 18–20.)  Furthermore, an October 16, 2007 appraisal of the Property by TPD failed to discover any right of way held by Plaintiff. (*Id.* ¶¶ 21–22.)  Based on the 2007 appraisal and a second title search by Nevada Title, Bank of Las Vegas extended a loan to Guard Dog secured by the Property for $1.6 million, and Guard Dog purchased a new title insurance policy with policy no. LP13NV1000-2013268 (the "Second Policy") from Westcor Title. (*Id.* ¶¶ 23–24.)  The TPC lists ten causes of action: (1) Declaratory Relief (against Chicago Title, Fidelity Title, and Westcor Title); (2) Negligence (against all Third-Party Defendants); (3) Breach of Contract (against Wagon Trail, Carl W. Thomas, and Laura M. Thomas); (4) Breach of Contract (against Chicago Title and Fidelity Title); (5) Breach of Contract (against Westcor

Title); (6) Breach of Contract (against Nevada Title); (7) Negligent Misrepresentation (against Wagon Trail, Carl W. Thomas, and Laura M. Thomas); (8) Negligent Misrepresentation (against Nevada Title); (9) Intentional Misrepresentation (against Wagon Trail, Carl W. Thomas, and Laura M. Thomas); and (10) Intentional Misrepresentation (against Nevada Title). Only negligence is pled against TPD. (*See id.* ¶¶ 46–54.)

Chicago Title and Fidelity Title previously filed a Motion to Dismiss Third-Party Complaint (ECF No. 16) based on impermissible claim-splitting, which motion was rendered moot when Guard Dog voluntarily dismissed Chicago Title and Fidelity Title as Third-Party Defendants, along with two others. (*See* ECF No. ECF No. 33–37.) These dismissals eliminated the first, fourth, and fifth third-party claims. In the present motion, TPD move for summary judgment against the only third-party claim pled against them: negligence.

## II.   SUMMARY JUDGMENT STANDARDS

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported

claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See*

*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   DISCUSSION**

A prima facie claim for negligence in Nevada, as elsewhere, consists of four elements: "(1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't LLC*, 180 P.3d 1172, 1175 (Nev. 2008). Guard Dog alleges that it entered into agreements with TPD regarding the 2008 financing of the Property, (*see* ECF No. 9 ¶ 48), that TPD owed a duty of care in connection with the purchase and financing of the property, (*see id.* ¶ 49), and that TPD breached the duty, causing damage, (*see id.* ¶¶ 51–53), when their October 16, 2007 appraisal of the Property failed to discover any right of way held by Plaintiff, (*see id.* ¶¶ 21–22, 46). Guard Dog also alleges having actually and justifiably relied on TPD. (*See id.* ¶ 50.)

TPD argue: (1) the economic loss rule prevents recovery in tort without personal injury or property damage; (2) Guard Dog has not properly alleged actual causation both because Guard Dog knew of the right of way before the appraisal and because the fence was not yet in place when TPD performed the assessment; (3) TPD cannot be impled under Rule 14, because Guard

Dog does not allege that TPD are responsible for the acts of which Plaintiff is aggrieved.

Guard Dog first responds that the motion for summary judgment is premature because it was made only twelve days after the discovery planning conference, and Guard Dog has therefore "not had the opportunity to discover information that is essential to [its] opposition." *Anderson*, 477 U.S. at 250 n.5 (citing Fed. R. Civ. P. 56(f)). A party opposing summary judgment must support a claim of lack of opportunity to respond with an affidavit specifying the reasons that it cannot yet present facts essential to justify its opposition. Fed. R. Civ. P. 56(f). Guard Dog attaches the affidavit of its manager, Tiffany Bell-Raats, but Bell-Raats does not attest to any circumstances supporting the conclusion that Guard Dog has not had the opportunity to discover information that is essential to its opposition. (*See* ECF No. 50 at 9.) The affidavit is one page long and attests only to facts surrounding the purchase of the Property and TPD's appraisal of it. (*See id.*)

Guard Dog also argues that there is an exception to the economic loss doctrine for professional negligence. The Court need not examine this argument, because the negligence claim fails for a different reason.

Finally, Guard Dog argues that it has adequately pled a professional negligence cause of action. The Nevada Supreme Court has not ruled on the issue of whether a borrower may sue his appraiser for negligence, although one reported case approves a negligent misrepresentation action against an appraiser by a lender. *See, e.g.*, *Goodrich & Pennington Mortgage Fund, Inc. v. J.R. Woolard, Inc.*, 101 P.3d 792 (Nev. 2004). This is the typical litigation pattern in other states, as well, *see, e.g.*, *Mass. Asset Fin. Corp. v. Harter, Secrest & Emery, LLP*, 430 F.3d 59 (1st Cir. 2005) (Massachusetts law).

In some states, as a matter of law, a real estate appraiser owes no duty of care to a

borrower, but only to the lender. *See Decatur Ventures, LLC v. Daniel*, 485 F.3d 387, 390 (7th Cir. 2007) (Indiana law). Even though the borrower must pay the appraisal fee as a part of his closing costs, the appraiser's duty is to the lender, because the purpose of the appraisal is to protect the lender from lending a sum of money that exceeds the value of the property to be used as a security for the loan. Historically, the appraiser's duty is to assess the value of the collateral for the lender, not to assure the buyer of his bargain. The lender requires the borrower to pay for the appraisal, essentially as a part of the cost of the extension of the loan, but this requirement does not impose a duty on the appraiser with respect to the borrower.

In some states, a real estate appraiser owes a duty of care to a borrower under certain circumstances. In Iowa, a borrower may be considered a third-party beneficiary of an appraiser and may recover under a contract theory. *See Vogan v. Hayes Appraisal Assocs.*, 588 N.W.2d 420, 424–25 (Iowa 1999). The Arizona Court of Appeals recently published a ruling with a lengthy discussion of the question in the context of a negligent misrepresentation claim. *See Sage v. Blagg Appraisal Co.*, 209 P.3d 169, 170–76 (Ariz. Ct. App. 2009). The court ruled that an appraiser in a residential real estate transaction owes a professional duty of care to the buyer because of the modern reality that buyers in fact rely on appraisals in making their purchases, and in such transactions the appraiser knows that the buyer will receive the report or has a right to receive it. *See Sage*, 209 P.3d at 174 ("[I]n many cases, as here, a form residential purchase contract empowers the buyer to cancel the contract if the appraisal falls short. Whether the purchase will be made undisputedly hinges on the appraisal; we would blink at reality to conclude otherwise."). The *Sage* court noted that Alabama, New Hampshire, Texas, and Washington have recognized a duty of an appraiser to a buyer because it is known or foreseeable that a buyer will rely on the appraisal in making the decision to purchase the property. *See id.* at

173. It is therefore possible that the Nevada Supreme Court would recognize a negligent misrepresentation claim by a buyer against an appraiser if the purchase contract permitted the buyer to cancel the contract based on the appraisal and it was at least foreseeable to the appraiser that the buyer might rely, because the Nevada Supreme Court already recognizes a negligent misrepresentation cause of action against an appraiser by a lender. *See Goodrich & Pennington Mortgage Fund*, 101 P.3d at 797–98.

Still, even assuming that the Nevada Supreme Court would (1) impose a duty on appraisers for the benefit of borrowers and (2) impose that duty in the commercial real estate context, in this case Guard Dog purchased the Property before TPD made their appraisal, making a negligent misrepresentation action implausible for lack of reliance, at least as to the difference in value of the Property itself. The Arizona Court of Appeals has distinguished between a buyer who is contractually permitted to cancel a purchase based on an unsatisfactory appraisal, *see Sage*, 209 P.3d 169, 172–73, and a buyer who is contractually bound to purchase the property before the appraisal, *see Kuehn v. Stanley*, 91 P.3d 346, 350 (Ariz. Ct. App. 2004) (plaintiffs could not show the reliance element of a negligent misrepresentation claim because they "were already contractually bound to purchase the property, contingent upon qualifying for funding, before they received the appraisal"). In the former case, a buyer can be said to be aggrieved by reasonable reliance on a negligently high appraisal, because he would have had the ability to cancel the sale if the appraisal had been accurate. In the latter case, however, a buyer cannot be said to be aggrieved by a negligently high appraisal, because he would not have been able to cancel the sale at that stage even if the appraisal had been accurate.

The Court thus need not determine in this case whether the Nevada Supreme Court would recognize the duty of an appraiser to a buyer, or the scope of such a duty, because the 2008

financing for which TPD performed its 2007 appraisal occurred a year after Guard Dog purchased the Property in 2006.  Under such circumstances, Guard Dog cannot claim to be aggrieved by a negligently high appraisal, because it could not have cancelled the purchase regardless of the appraisal--it already held title to the Property.  Unlike the property buyer who is "stuck" with title to property worth less than the appraisal indicated, and whose loan proceeds have all been passed on to the seller, Guard Dog was the recipient of a cash loan with the previously owned Property as collateral.  Guard Dog is not stuck with a Property worth less than Guard Dog paid for it due to anything TPD have done.  Only the lender should be aggrieved here, because its cash loan to Guard Dog may be under secured.  The only damages TPD may have caused Guard Dog are related to financing charges in connection with the 2008 loan, not the difference in value in connection with the 2006 purchase, *see Goodrich & Pennington Mortgage Fund*, 101 P.3d at 795–96 (holding that a negligent appraiser can be liable for both the difference in value and consequential damages in reliance on the appraisal), and, even then, only if Guard Dog had the contractual ability to cancel the 2008 loan based on the 2007 appraisal and the Nevada Supreme Court were to recognize a duty owed to the borrower by the appraiser in a commercial real estate context.

These damages--the financing charges in connection with the 2008 loan--are not recoverable from TPD under Rule 14, because Plaintiff does not allege that Guard Dog caused Plaintiff such damages.  The only connection between Plaintiff's quiet title action against Guard Dog and Guard Dog's negligence/negligent misrepresentation action against TPD is a series of two transactions: (1) Guard Dog's purchase of the property without knowledge of Plaintiff's easement; and (2) TPD's appraisal of the property a year later.  Mere transactional relation is not enough to implead TPD under Rule 14. Fed. R. Civ. P. 14(a)(1); *see Krainski v. Mill*, 356 Fed.

Appx. 951 (9th Cir. 2009); *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199–200 (9th Cir. 1988) (citing 6 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1446, at 257 (2d ed. 1971)) ("[A] third-party claim may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and is secondary or derivative thereto."); *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (citing *id.*). Guard Dog must separately sue TPD if it believes it can prove a professional negligence cause of action based on the 2007 appraisal.

## CONCLUSION

IT IS HEREBY ORDERED that Third-Party Defendants' Motion for Summary Judgment (ECF No. 43) is GRANTED without prejudice to Guard Dog Heaven, LLC's right to bring its claims against Third-Party Defendants in a separate lawsuit.

DATED this 14th day of September, 2010.

_____
Gloria M. Navarro
United States District Judge