**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNION PACIFIC RAILROAD COMPANY,

Plaintiff,

v.

GUARD DOG HEAVEN, LLC,

Defendant.

2:09-CV-1622 JCM (RJJ)

**ORDER**

Presently before the court is plaintiff Union Pacific Railroad Company's third motion for judgment on the pleadings or summary judgment. Doc. #112. Defendant Guard Dog Heaven has filed an opposition (doc. #113), to which and Union Pacific has replied (doc. #114).

## I. Background

In the instant action, Union Pacific seeks to enforce an alleged railroad right of way under the General Railroad Right of Way Act of 1875 against Guard Dog. Union Pacific claims that as successor in interest to the San Pedro, Los Angeles and Salt Lake Railroad Company, it is entitled to the rights of way its predecessor in interest retained in the disputed parcel of land, identified as Clark County Assessor Parcel Number 177-06-101-009. Guard Dog purchased the disputed parcel in 2006. Guard Dog has now constructed a fence and storage yard on the property, which plaintiff claims infringes upon its ability to perform railroad tie installation and maintenance work pursuant to its alleged right of way.

James C. Mahan
U.S. District Judge

The complaint alleges three claims for relief: (1) declaratory relief under 28 U.S.C. § 2201 and quiet title under NRS 40.010, (2) trespass, and (3) private nuisance. Union Pacific requests: (1) a declaration from the court quieting its title to the right of way, (2) damages resulting from the loss of exclusive use, enjoyment and possession of the right of way, and (3) reasonable attorneys' fees and costs.

This court denied Union Pacific's first motion for summary judgment on the grounds that it had failed to provide "authenticated evidence demonstrating: (1) that it is the successor in interest to Los Angeles & Salt Lake Railroad, (2) that it has incorporated, and (3) that it has filed a copy of its articles of incorporation with the Secretary of the Interior." Order, Doc. #81, filed April 21, 2011. The court explained that these materials are required for the court to determine if Union Pacific is entitled to judgment as a matter of law.

Union Pacific then filed a second motion for summary judgment. This court denied that motion, finding that the authenticated map Union Pacific submitted, purporting to establish Union Pacific's right of way on the disputed parcel, insufficient to establish, as a matter of law, Union Pacific's right of way, and therefore denied the second motion.

Union Pacific has conducted additional discovery and now contends that it has evidence establishing that the right of way applied against the disputed parcel since April 20, 1906. This third motion for summary judgment now follows.

## II. Discussion

### *A. Standard of Review*

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

. . .

James C. Mahan
U.S. District Judge

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

*B. Ownership and Location of the Right of Way*

Pursuant to the General Railroad Right of Way Act of 1875:

> The right of way through the public lands of the United States is granted to any railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks, turnouts, and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road.

43 U.S.C. § 934.

Thus, to establish a right of way pursuant to the act, a party must submit proof (1) of its organization and (2) of its having filed a copy of its articles of incorporation with the secretary of the interior. In this case, Union Pacific must also establish that it is the successor in interest to Los Angeles & Salt Lake Railroad and therefore is entitled to its predecessor's right of way under the act. The court's previous orders have already found that Union Pacific has established these elements. The only issue that remains, is proof of where the right of way is located.

The court finds that Union Pacific has now produced sufficient evidence to establish the location of its right of way. Union Pacific has provided, as Exhibit 1, a map from the Bureau of Land Management, authenticated pursuant to Fed. R. Evid. 901(b)(7), that depicts a railroad traversing Lots 98 and 99. The subject property is located on Lots 98 and 99. *See* Ex. 2 (authenticated in previous motion for summary judgment, *see* doc. #83). The bottom left corner of the Bureau of Land Management map depicts a railroad containing the wording "CC 0360 100'." *See* Ex. 1. The Bureau of Land Management's land records show that "CC 0360 100'" references a 100 foot 1875 Act right of way granted by the Secretary of the Interior on April 20, 1906. *See* Ex.

James C. Mahan
U.S. District Judge

3. This court previously found that the April 20, 1906, letter established the relevant right of way. Accordingly, the court is satisfied that the April 20, 1906, right of way is located on the subject property.

This conclusion is further strengthened by a survey of Guard Dog's property obtained by Union Pacific. *See* Ex. 6. The survey depicts the location of Guard Dog's property, the Union Pacific right of way, and the obstruction Guard Dog has constructed. *See id.*

No genuine issue of material fact remains regarding the location and ownership of the right of way. It is clear that the Secretary of the Interior granted a right of way to the San Pedro, Los Angeles & Salt Lake Railroad Company on April 20, 1906. Further, Union Pacific is the successor-in-interest to San Pedro, Los Angeles & Salt Lake Railroad Company. *See* Order, Oct. 21, 2011, doc. #96. Lastly, the evidence overwhelmingly demonstrates that the right of way cuts across the disputed property.

*C. Laches*

In its opposition, Guard Dog invokes the equitable defense of laches, arguing that Union Pacific has unreasonably delayed in seeking to enforce its rights against Guard Dog, and should therefore be barred from obtaining relief.

Laches is an equitable defense to a civil action. To establish laches, Guard Dog must show: (1) a lack of diligence by Union Pacific and (2) prejudice to Guard Dog. *Costello v. United States*, 365 U.S. 265, 282 (1961). Laches "is not a doctrine concerned solely with timing. Rather, it is primarily concerned with prejudice." *In re Beauty*, 306 F.3d 914, 924 (9th Cir. 2002). A lengthy delay, even if unexcused, that does not result in prejudice does not support a laches defense.

Here, the prejudice claimed by Guard Dog is that Union Pacific's right of way infringes on Guard Dog's full use and enjoyment of its land. Guard Dog is understandably upset that it paid over $1 million dollars and now cannot use the land as it pleases. Moreover, Guard Dog argues that Union Pacific has never before sought to enforce its right of way in such a manner against previous owners of the property.

. . .

James C. Mahan
U.S. District Judge

What Guard Dog fails to demonstrate, however, is that Union Pacific's delay has prejudiced Guard Dog's defense to this action. There is no allegation that Guard Dog has "suffered any evidentiary-based prejudice" due to Union Pacific's delay. "It does not assert that any documents have been lost, or that any witnesses are deceased or have trouble recollecting distant events." *Grand Canyon Trust v. Tucson Elec. Power Co.*, 391 F.3d 979, 987 (9th Cir. 2004).

The evidentiary record in the instant case, though old, is complete. It establishes the legality and location of Union Pacific's right of way. Had Union Pacific recorded its interest earlier, or otherwise enforced its rights, Guard Dog may not have purchased this land. While the court sympathizes with Guard Dog's predicament, this is not the sort of prejudice laches protects against. Rather, the laches doctrine exists because of "the difficulty of doing entire justice when the original transactions have become obscure by time, and the evidence may be lost." *McKnight v. Taylor*, 42 U.S. 161, 168 (1843). Here, entire justice can be done based on the existing evidentiary record, as the court can determine the existence, scope, and location of Union Pacific's right of way.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Union Pacific's third motion for summary judgment (doc. #112) be, and the same hereby is, GRANTED.

The clerk of the court shall enter judgment accordingly.

DATED August 8, 2012.

James C. Mahan

**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**